UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ROBERT M. ATWELL, )
 )
    Plaintiff, )
 )
v. ) NO.: 3:22-CV-438-KAC-DCP
 )
DAVID RAUSCH, *in his official* )
*capacity*, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

This case is before the Court on "Plaintiff's Motion for Preliminary Injunction," [Doc. 7], and Defendant's "Unopposed Motion to Withdraw Response in Opposition to Plaintiff's Motion for a Preliminary Injunction," [Doc. 35]. For the reasons stated below, the Court grants Defendant's "Unopposed Motion to Withdraw Response in Opposition to Plaintiff's Motion for a Preliminary Injunction" [Doc. 35] and grants "Plaintiff's Motion for Preliminary Injunction" [Doc. 7].

### I.    BACKGROUND

**A. History of Tennessee's Sex Offender Registration Laws**

*i. Tennessee's Sexual Offender Registration and Monitoring Act of 1994*

In 1994, the Tennessee General Assembly passed the Sexual Offender Registration and Monitoring Act ("SORMA"). 1994 Tenn. Pub. Acts ch. 976. SORMA charged the Tennessee Bureau of Investigation ("TBI") with "establish[ing], maintain[ing], and updat[ing] a centralized record system of sexual offender registration and verification information." *Id.* § 7(a). Qualified sexual offenders were required to register within ten (10) days of release from probation, parole, or incarceration without supervision. *Id.* § 4. Registrants were also required to report any change

of residence, whether temporary or permanent, within ten (10) days and complete and return a registrant verification and monitoring form by mail every ninety (90) days. *Id.* §§ 4, 5. Offenders were not required to report in person or pay any fees. Information in the registry was confidential and available only to law enforcement. *Id.* § 7(c). And sex offenders could petition a court for relief from SORMA's requirements ten (10) years after release from probation, parole, or incarceration without supervision. *Id.* § 8. Violations of SORMA could result in a registrant being charged with a Class A misdemeanor. *Id.* § 9.

In the years following enactment, the Tennessee General Assembly amended SORMA multiple times to expand its scope. *See Doe # 1 v. Lee*, 518 F. Supp. 3d 1157, 1170 (M.D. Tenn. 2021) (summarizing amendments). In 2004, the Legislature ultimately repealed SORMA and replaced it with the Sexual Offender and Violent Sexual Offender Registration, Verification, and Trafficking Act ("2004 SORVTA"). 2004 Tenn. Pub Acts, ch. 921. The 2004 SORVTA required all registrants to make regular in-person reports to law enforcement agencies and pay administrative fees. Tenn. Code Ann. §§ 40-39-203, 204 (2004). The law required additional reports within forty-eight (48) hours of certain triggering events, including but not limited to changes of residence or employment. *Id.* §§ 40-39-203, 204(c). The 2004 SORVTA classified registrants as "sexual offenders" or "violent sexual offenders," and required violent sexual offenders to remain on the registry for life and report in-person on a quarterly basis (rather than annually). Tenn. Code Ann. §§ 40-39-202(9), 204(b)-(c), 207(g) (2004). A violation of the 2004 SORVTA was a felony offense. *Id.* § 40-39-208(b).

After passing the 2004 SORVTA, the Tennessee General Assembly made various amendments before arriving at the current text of the Sex Offender and Violent Sex Offender Registration, Verification and Tracking Act, Tenn. Code Ann. § 40-39-201 (2023), *et seq*. (the

2

"Current Act"). The Current Act requires all registrants included in the class of "violent sexual offenders," including categories of "sexual offenders who prey on children" and "repeat sexual offenders," to register for life. Tenn. Code Ann. §§ 40-39-201(b)(1), 202(20), 202(30)-(31), 207(g)(2). Registrants are required to submit a substantial amount of personal information, including home address, phone number, employer address, photographs, and more, which is "considered public information" and made available through Tennessee's Sex Offender Registration website. *Id.* § 40-39-206(d). The Current Act requires sex offenders to report changes in pertinent information within forty-eight (48) hours. *Id.* § 40-39-203(a)(1), (4), (6). Failure to comply with the Current Act's registration and reporting requirements constitutes a Class E felony. *Id.* § 40-39-208(b). Beyond registration and reporting requirements, the Current Act also imposes a number of significant restrictions on a sex offender's movement, including that, absent certain exceptions, a sex offender cannot knowingly:

> (A) Be upon or remain on the premises of any building or grounds of any public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when the offender has reason to believe children under eighteen (18) years of age are present;
>
> (B) Stand, sit idly, whether or not the offender is in a vehicle, or remain within one thousand feet (1,000') of the property line of any building owned or operated by any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public in this state when children under eighteen (18) years of age are present, while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there; or
>
> (C) Be in any conveyance owned, leased or contracted by a school, licensed day care center, other childcare facility or recreation center to transport students to or from school, day care, childcare, or a recreation center or any related activity thereof when children under eighteen (18) years of age are present in the conveyance.

*Id.* § 40-39-211(d)(1). Violations are a class E felony. *Id.* § 40-39-211(f).

### B. Plaintiff's Background

On July 31, 1996, Plaintiff committed misdemeanor child molestation in the second degree in Missouri under Missouri law [*See* Docs. 6-1; 14-5]. He was convicted on October 28, 1996 [Doc. 14-5 at 2]. Plaintiff also committed sexual assault on January 13, 2000 in Missouri under Missouri law, and he was convicted on August 16, 2001 [*See* Docs. 6-1; 14-5]. Due to these convictions, he was designated as a sex offender under Missouri law. Plaintiff is no longer required to register as a sex offender in Missouri, but he is registered in Kansas, where he currently resides [Doc. 8 at 2]. Under Tennessee law, Plaintiff was required to register and report in person within forty-eight (48) hours of "establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation or becoming a student" in Tennessee based solely on his registration as a sex offender in Kansas and Missouri. *See* Tenn. Code Ann. § 40-39-203(a)(1)-(2) (2007 amendment).

On August 6, 2018, Plaintiff accompanied his then-girlfriend and her minor son to register the minor for elementary school in Washington County, Tennessee [Docs. 6 at 5; 8 at 2]. School officials asked Plaintiff to present his driver's license for identification and ran his license through a multi-state system that searches sex offender registries nationwide and indicates whether an individual is registered as a sex offender in another state [Docs. 6 at 5; 8 at 2]. Plaintiff was not registered as a sex offender in Tennessee at the time, but the system indicated that Plaintiff was a registered sex offender in Missouri, prompting school officials to call the police [Docs. 6 at 5; 8 at 2]. Plaintiff was arrested later that day and indicted in Tennessee for being a sex offender on the premises of a public school, in violation of Tenn. Code Ann. § 40-39-211(d)(1) [Docs. 6 at 5; 8 at 2]. At trial, Plaintiff admitted that he was a sex offender during the relevant time, and a jury found him guilty. *See State v. Atwell*, No. E2021-00067-CCA-R3-CD, 2022 WL 601126, at *1-2

(Tenn. Crim. App. Mar. 1, 2022), *app. denied* (Aug. 3, 2022), *cert. denied*, 143 S. Ct. 492 (2022). "The trial court imposed a sentence of one year, with ninety days incarceration, and the remainder to be served on probation." *Id.* at *1.

After his conviction, Plaintiff was added to the Tennessee Sex Offender Registry ("TSOR") on July 8, 2020 [Doc. 27 at 9]. On September 10, 2020, Plaintiff was moved to "inactive" status on the TSOR [*Id.*]. The Current Act does not include or define an "inactive" status. *See* Tenn. Code Ann. § 40-39-201, *et seq.* Nor have the Parties identified a definition for "inactive" status elsewhere in the law. And Plaintiff alleges that he "was never provided notice or a hearing regarding why, or on what basis, his status was determined by the TBI to be 'inactive,' or what it means" [Doc. 23 at 8]. The Current Act does identify several situations in which a sex offender may be relieved of his or her reporting or registration requirements, but the Current Act does not contain an exception for a sex offender who is physically located outside of Tennessee. *See* Tenn. Code Ann. § 40-39-204(b)(1), (c), (f) (excusing registrants from reporting and registration requirements while incarcerated, incapacitated, or in a nursing home). Accordingly, under the Current Act, Plaintiff's "information continues to be reported on the [Tennessee Sex Offender Registration] website" [Doc. 27 at 9-10].

### C. Litigation Background

On December 9, 2022, Plaintiff filed a First Amended Complaint against Defendant David B. Rausch, in his official capacity as Director of the TBI [Doc. 6]. Thereafter, Plaintiff filed a Motion for Preliminary Injunction [Doc. 7]. Plaintiff argued that the Current Act "violates the *Ex Post Facto* Clause of the United States Constitution" [*See* Doc. 8 at 1]. He specifically requested (1) a "preliminary injunction prohibiting the Defendant from enforcing any of the provisions of"

5

the Current Act "against the Plaintiff" and (2) "Plaintiff's immediate removal from" the TSOR [Doc. 7 at 1].

Defendant initially filed a response in opposition to Plaintiff's Motion for Preliminary Injunction arguing that (1) Plaintiff lacks standing to challenge the Act and, therefore, the Court lacks subject-matter jurisdiction, [Doc. 14 at 4; *see also* Doc. 27]; (2) Plaintiff's ex post facto claim lacks merit, [Doc. 14 at 7; *see also* Doc. 27]; and (3) Plaintiff has not demonstrated that he will suffer irreparable harm in the absence of a preliminary injunction, [Doc. 14 at 22; *see also* Doc. 27]. The Court held a hearing on the Motion for Preliminary Injunction and received supplemental briefing from the Parties [*See* Docs. 18, 23, 27]. On May 8, 2023, Defendant filed an "Unopposed Motion to Withdraw Response in Opposition to Plaintiff's Motion for a Preliminary Injunction" [Doc. 35]. In that Motion, Defendant "maintains that the [Current] Act does not violate the Ex Post Facto Clause," but "recognizes that *Does # 1-5 v. Snyder*, 834 F.3d 696, 699 (6th Cir. 2016), is binding precedent and that, accordingly, federal district courts in Tennessee have found the [Current Act] violates the Ex Post Facto Clause" [*Id.* at 1-2]. "[B]ecause of the precedent . . . in the Sixth circuit and in the Tennessee federal district courts, Defendant does not oppose Plaintiff's request for a preliminary injunction" [*Id.* at 2].

## II. DEFENDANT'S UNOPPOSED MOTION TO WITHDRAW RESPONSE IN OPPOSITION

The Court addresses Defendant's "Unopposed Motion to Withdraw Response in Opposition to Plaintiff's Motion for a Preliminary Injunction" [Doc. 35] first. The Court has broad discretion to grant a motion to withdraw a party's filing. Here, Defendant has determined that he does not wish to proceed in opposition to Plaintiff's Motion for Preliminary Injunction [*See* Doc. 35]. Accordingly, for good cause shown and without opposition, the Court **GRANTS** Defendant's

6

"Unopposed Motion to Withdraw Response in Opposition to Plaintiff's Motion for a Preliminary Injunction" [Doc. 35].

### III. PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY INJUNCTION

Second, the Court addresses Plaintiff's unopposed "Motion for Preliminary Injunction" [Doc. 7]. As an initial matter, even though Defendant does not oppose Plaintiff's "Motion for Preliminary Injunction," the Court must examine Plaintiff's Motion because "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).

#### A. Standing

Because Article III standing is a "threshold question in every federal case," the Court must satisfy itself that Plaintiff has standing to challenge the Current Act. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Defendant raised the issue of standing in his initial response in opposition to Plaintiff's Motion for Preliminary Injunction [Doc. 14]. But by withdrawing his response in opposition to Plaintiff's Motion for Preliminary Injunction, [Doc. 7], Defendant waived any argument that Plaintiff lacks standing to challenge the Act. *See United States v. Denkins*, 367 F.3d 537, 543-44 (6th Cir. 2004). Further, the Court has satisfied itself that Plaintiff has standing to challenge the Current Act.

Here, a substantial amount of Plaintiff's personal information and status as a sex offender "continues to be reported on the [Tennessee Sex Offender Registration] website" [Doc. 27 at 9-10]. That is sufficient to establish standing in this case. *See Cutshall v. Sundquist*, 193 F.3d 466, 471-72 (6th Cir. 1999) (holding that Plaintiff met Article III's standing requirements because "[Plaintiff]'s status as a convicted sex offender registered in accordance with the Act arguably results in an injury because he faces a specific threat of being subject to the release of registry information

every day."). But even if the presence of Plaintiff's personal information and status as a sex offender on the TSOR were not sufficient to establish standing, Plaintiff was convicted of violating the Current Act, and Plaintiff has "significantly restrict[ed] and alter[ed] how he would otherwise live his life if he were not required to comply with the [Current Act]" "[t]o avoid even the chance of violating" the Current Act [Doc. 8 at 7]. *See Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (holding that a plaintiff can establish standing by alleging that he "refrained from" a relevant activity due to the "specter of" enforcement of a challenged statute). Accordingly, Plaintiff has standing to challenge the application of the Current Act to him.

### B. Plaintiff has Demonstrated a Likelihood of Success on the Merits.

The Court next considers Plaintiff's Motion for Preliminary Injunction. The standard for a preliminary injunction is an exacting one. The Court considers "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365-66 (6th Cir. 2022) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam)). "While no single factor necessarily is dispositive, the first—the likelihood of success—in many instances will be the determinative factor." *Dahl v. Bd. of Tr. of W. Mich.*, 15 F.4th 728, 730 (6th Cir. 2021) (citations omitted).

The Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. An ex post facto law is one that "disadvantage[s] the offender affected by it . . . by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citation omitted). A state violates the Ex Post Facto

8

Clause when it enacts a law that "inflicts a greater punishment, than the law annexed to [a] crime, when committed." *Id.* (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)); *see also Smith v. Doe*, 538 U.S. 84, 92 (2003).

To determine whether a law violates the Ex Post Facto Clause, the Court examines (1) "whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil;'" *Smith*, 538 U.S. at 92 (quoting *United States v. Ward*, 448 U.S. 242, 248-49 (1980)); and (2) "the practical effect of the challenged provisions" of the law; *Doe v. Bredesen*, 507 F.3d 998, 1004 (6th Cir. 2007). Courts in the Sixth Circuit consider five factors to determine whether the purpose or effect of a law is punitive in nature: (1) whether "the law inflict[s] what has been regarded in our history and traditions as punishment;" (2) whether "it impose[s] an affirmative disability or restraint;" (3) whether "it promote[s] the traditional aims of punishment;" (4) whether "it [has] a rational connection to a non-punitive purpose;" and (5) whether "it [is] excessive with respect to this purpose." *Snyder*, 834 F.3d at 701 (citations omitted). These factors are "'neither exhaustive nor dispositive' . . . but are 'useful guideposts.'" *Smith*, 538 U.S. at 97 (internal citations omitted).

In *Does #1-5 v. Snyder*, the Sixth Circuit rejected application of Michigan's Sex Offender Registration Act—which is substantially analogous to the Current Act in text and history—as violative of the Ex Post Facto Clause. *See* 834 F.3d 696, 706 (6th Cir. 2016). *Snyder* is binding Sixth Circuit precedent, and Tennessee's sex offender registration regime is so similar to the Michigan regime at issue in *Snyder* that "[v]irtually every observation that the Sixth Circuit made about the Michigan regime could be made about [Tennessee's Current] Act with, at most, minimal tweaking." *See Reid v. Lee*, 476 F. Supp. 3d 684, 706 (M.D. Tenn. 2020); *see also Doe v. Rausch*, No. 22-CV-01131, 2023 WL 25734, at *12 (W.D. Tenn. Jan. 3, 2023) ("The Court finds that Sixth

Circuit's decision in *Snyder*, and many of its observations about Michigan's SORA, control the result in this case.").

Bound by *Snyder*, the Current Act, as applied to Plaintiff, likely violates the Ex Post Facto Clause. The Tennessee Legislature has expressed its intent that the purpose of Tennessee's sex offender registration law is civil, not punitive. *See Bredesen*, 507 F.3d at 1003-04. But the Court must still analyze the practical effect of the regime. *Id.* at 1004. This Court does not write on a blank slate, and the lack of disagreement among those jurists considering the issue is telling. As long as *Snyder* stands, Tennessee's sex offender registration regime would likely suffer the same fate as Michigan's regime as applied to Plaintiff. *See Craig v. Lee*, No. 22-CV-181, 2023 WL 2505896, *1-2 (M.D. Tenn. Mar. 14, 2023); *Doe #11 v. Lee*, 609 F. Supp. 3d 578, 598 (M.D. Tenn. 2022) ("The question of whether Tennessee's *ex post facto* application of its sexual offender requirements to individuals like [Plaintiff] is illegal under *Snyder* may not be entirely beyond debate, but the issue has been addressed so clearly and so many times that the court assumes that all of the attorneys and government officials involved understand the basic jurisprudential lay of the land." (citation omitted)); *Reid*, 476 F. Supp. 3d at 708. Accordingly, under prevailing precedent, Plaintiff has demonstrated a likelihood of success.

**C. The Other Preliminary Injunction Factors Do Not Counsel Against an Injunction.**

Having concluded that Plaintiff is likely to succeed on his claim, the other preliminary injunction factors do not counsel against the issuance of a preliminary injunction. The Sixth Circuit has suggested that "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). At a minimum, "irreparable injury is presumed." *Am. Civil Liberties Union Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015) (quoting *Obama for Am. v. Husted*, 697

F.3d 423, 436 (6th Cir. 2012)). There is undoubtedly a risk that Plaintiff may reoffend if he is no longer subject to the registration and reporting requirements of the Current Act, but that risk and the weight of that risk is unknown on this record. And "the public interest is served by preventing the violation of constitutional rights." *Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 436 (6th Cir. 2004). "[W]hile many . . . sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, punishment may never be retroactively imposed or increased" under the Constitution. *Snyder*, 834 F.3d at 705. Accordingly, the Court grants Plaintiff's "Motion for Preliminary Injunction" [Doc. 7].

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Defendant's "Unopposed Motion to Withdraw Response in Opposition to Plaintiff's Motion for a Preliminary Injunction," [Doc. 35], and **"**Plaintiff's Motion for Preliminary Injunction," [Doc. 7]. Plaintiff **MUST** be removed from the Tennessee Sex Offender Registry. And the Court **ENJOINS** Defendant from enforcing the Sex Offender and Violent Sex Offender Registration, Verification and Tracking Act, Tenn. Code Ann. § 40-39-201, *et seq.*, against Plaintiff, **effective on the date of this Memorandum Opinion and Order.**

IT IS SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge